No. 36,562

FUNKHOUSER EQUIPMENT COMPANY, *Appellee*, v. N. C. CARROLL et al., Partners doing business as N. C. CARROLL AND SONS GRAVEL COMPANY, *Appellants*.

(168 P. 2d 918)

Opinion filed May 4, 1946.

*R. F. Crick*, of Pratt, argued the cause, and *B. V. Hampton*, of Pratt, was on the briefs for the appellants.

*George Barrett*, of Pratt, argued the cause, and *E. R. Barnes*, of Pratt, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. The defendants have appealed from an order of the trial court by which certain matter was stricken from their answer.

After the formal allegations, the plaintiff alleged that on October 28, 1943, the parties entered into an agreement in writing, whereby the plaintiff sold the defendants and the defendants purchased from the plaintiff a used "Brown Hoist Crane on Crawlers" complete and that defendants agreed to pay plaintiff therefor $2,500 upon the receipt of it; that about November 3, 1943, the machine was delivered to defendants in compliance with the terms of the agreement and the purchase price became due; that defendants only paid $500 on the purchase price and there was due plaintiff from defendants $2,217.53. The prayer was for that amount. The written contract relied upon by plaintiff was attached to the petition.

The defendants for their answer admitted the purchase of the crane but denied that it was purchased from the plaintiff on the written contract, to which reference has been made. They further alleged that the machine was actually purchased on open account about the 18th of October, 1943, at the price stated; that it was to be immediately delivered to the defendants on payment by them of the freight charges but was not delivered until November 3, 1943; that at the time of its purchase defendants were engaged in the production of dry sand and gravel from a gravel pit and of washed sand and gravel from another pit some distance from the first one; that prior to its purchase defendants advised plaintiff they wished to purchase a crane which would do the heavy lifting necessary in the production of sand and gravel and that it was necessary that it could be moved from place to place on its own power so it could be used at both defendants' sand and gravel pits; that plaintiff informed defendants they had for sale a used crane that was capable of moving under its own power and of lifting loads weighing as much as fifteen tons. Defendants further alleged that at the time they purchased the machine on October 18, 1943, they stated to plaintiff that they had no experience in the use of cranes and relied on plaintiff to furnish one that would do the necessary work and they would rely on it for instructions in handling it and that since it was necessary that they have a crane that would move from place to place on its own power they made special inquiry of plaintiff as to the crawlers, tracks and other mechanisms of the machine in question and that the plaintiff then and there orally warranted that the tracks and other mechanism connected with the machine were in good and proper condition to

perform their work and relying on the honesty, good faith and integrity of the plaintiff and the representations and warranties made by the plaintiff they purchased the crane on October 18, 1943; that when it was delivered it was so defective it could not be moved on its own power from place to place and was not capable of lifting a greater load than five tons; that when they attempted to move it from the railway company's premises to their sand and gravel pit it broke down and could not be moved until some repairs were made; that by reason of defects in the crawlers and attachments it could not be moved from place to place on its own power and was not capable of lifting loads up to fifteen tons and there was a failure of the warranty given by the plaintiff; that plaintiff sent a man represented as an experienced operator to operate this crane but he refused to operate it because of its bad condition; that when defendants discovered that the crane was not in the condition as represented by plaintiff and could not be moved on its own power from place to place they offered to return it to plaintiff and pay freight charges to Kansas City, Mo. This offer of defendants to return the crane was refused by the plaintiff; that upon this refusal the defendants placed the crane in position for it to be used as a stationary crane in lifting loads within its reach and they were using it in that manner at the time the action was brought; and the defendants about May 18, 1943 (sic) made an agreement with plaintiff to settle their differences by a payment of $1,500 for the crane rather than $2,500 and defendants at that time paid $500 on this contract; that defendants admitted they were indebted to the plaintiff in the sum of $1,000 with interest at six percent, from the 18th day of May, 1944, making a total indebtedness of $1,085, which sum was tendered at the time the answer was filed for the use of the plaintiff; that at the time the contract for the purchase of the machine was made nothing was said about the making of a subsequent written order; that the execution of the written order, which was attached to the plaintiff's petition, was entirely without consideration; was never carried into effect by the delivery of the machine mentioned and the defendants denied they were indebted in any sum whatever upon it. The defendants further alleged that they were damaged on account of the failure of the warranty in the amount of $1,250 and they asked that that amount be deducted from the amount found to be due plaintiff.

For a second defense, defendants made the first defense a part thereof and alleged that the written contract was executed without consideration and did not clearly set forth the real agreement between the parties in that it did not contain the representations made by the parties that the crane was in condition to do the work and perform the service required by the defendants and all the written contract after the statement of the purchase price was not contained in the original contract of sale. Defendants further stated that if the writing was taken as a further evidence of the original oral contract then it should be reformed and made to speak the truth in agreement with the original oral contract by stating the representation of warranty alleged; and that all of the written contract after the purchase price should be stricken out. In this answer the defendants further alleged that after the purchase of the machine had been agreed upon by the parties, the written agreement was prepared by the plaintiff and when received by defendants was signed by one of the defendants, Vera E. Carroll, but that she did not know of the omissions of warranty and she inadvertently signed it not knowing that it did not conform to the original oral agreement; that the plaintiff in preparation of the instrument either made such omissions of warranty unintentionally, which constituted a mutual mistake, or if they were made intentionally, then such acts were fraudulent on the part of the plaintiff and that in either event it should be reformed. Defendants next alleged that plaintiff knew of the defects in the machine and intentionally concealed the same from the defendants and knew that the machine could not be moved from place to place on its own power. The prayer was that the court order a reformation of the written contract; that defendants have judgment against the plaintiff in the sum of $1,250 to be credited on any sum found due the plaintiff on either the original oral agreement of sale and purchase set out in defendants' first defense or on the written instrument set out in plaintiff's petition, or, that if the plaintiff should so elect, it recover from defendants $1,000 with interest from May 20, 1944.

The plaintiff filed a motion to strike from this answer all of the first defense after the second paragraph where the defendants denied that the machine was purchased from the plaintiff on a written contract and all of the second defense in its entirety.

The court sustained this motion in part as to the first defense by striking out all matters from the answer except that which had to

do with the compromise agreement and further struck out all of the second defense.

This had the effect of leaving the defendants the right to prove that they did not purchase the machine on the written contract, and that a compromise contract was made, by which the defendants agreed to pay $1,500 for the machine rather than $2,500 and that they had paid $500 on this contract.

The plaintiff asked that this motion be sustained on three grounds —first, the defenses were inconsistent; second, that the allegations did not constitute a legal defense to the cause of action set out in plaintiff's petition and third, because the matters pleaded were redundant and immaterial.

In sustaining this motion the trial court stated that the written contract covered all matters claimed by the defendants to have entered into the oral negotiations and that while the oral contract, as pleaded, claimed certain representations and warranties, the written contract provided against reliance on them. The court further stated that no fraud or mutual mistake was alleged except as argument against inadvertence. From this it seems the trial court sustained the motion to strike on the ground the stricken matter was no legal defense to plaintiff's cause of action.

Plaintiff argues first that the appeal should be dismissed because the order from which the appeal was taken was not appealable, being within the sound discretion of the trial court. Under some circumstances this point would be good. Here, however, the action of the trial court has the effect of depriving the defendants of a defense pleaded to the merits. If this motion was properly sustained then defendants will never again have an opportunity to take advantage of the matter stricken as a defense. The motion has all the effect of a demurrer to so much of the answer. It should be considered as a demurrer. See *In re Estate of Reed*, 157 Kan. 602, 142 P. 2d 824; *Norman v. Railway Co.*, 101 Kan. 678, 168 Pac. 830, and *Security Nat'l Bank v. West*, 128 Kan. 534, 278 Pac. 729.

Plaintiff realizes the force of the argument that rather than a motion to strike they should have filed a motion to require the defendants to elect upon which defense they would rely. They meet this argument, however, by claiming that defendants did in fact make such an election when they alleged the compromise contract, which the trial court refused to strike. Plaintiff argues from this that defendants are limited to that defense, hence the other defenses were properly stricken.

We are not impressed with this argument. Defendants had the right to set forth in their answer as many grounds of defense as they might have. (G. S. 1935, 60-710.) See, also, *Brownlee v. Bliesner*, 120 Kan. 145, 242 Pac. 453.

There is nothing in the matter stricken from the first defense, the proof of which would involve a contradiction of the matter left in the answer. The allegations left in the answer denied that the machine was bought on any written contract. The stricken matter then alleged the machine actually was bought under an oral contract which was fully consummated and the machine delivered and in the hands of defendants before the writtten contract was ever executed. These allegations are open to the interpretation in the absence of a motion to make definite and certain that there was no consideration for the written contract. It stated a defense to an action on the written contract. See 22 C. J. 1258; also *Fudge v. Kelley*, 171 Iowa 422 and *Smith v. Hunt*, 50 Ind. App. 592. The oral contract, it is alleged, contained warranties. Then the paragraph left in the answer alleged a settlement of the whole matter by a compromise contract. Neither one contradicts the other. A prima facie case as to each one of these defenses might very well be established by the same witnesses.

With the stricken matter out of the answer defendants would be left with no defense at all if they failed to establish the compromise.

Plaintiff says in its brief that defendants attempted to plead an oral contract at variance with the terms of a plain unambiguous written contract. Defendants did not seek to vary the terms of the written contract. They merely alleged that their purchase was made under an oral contract which was a completed transaction before they ever saw the written contract.

It was error for the trial court to strike these allegations from the answer.

In their second defense defendants pleaded that the written contract did not state the real agreement between the parties either on account of fraud of the plaintiff and mistake of the defendants or mistake of both parties. The relief asked was that the written contract be reformed to state the real agreement of the parties. No motion to require defendants to make this answer more definite and certain was filed. In the absence of such a motion the answer should receive a liberal construction on a motion to strike, which amounts to a demurrer. Where a written instrument is signed

by the mistake of one party caused by the fraud of another it may be reformed to state the real agreement of the parties. See *American Nat'l Bank v. Marshall*, 122 Kan. 793, 253 Pac. 214; also, *Cox v. Beard*, 75 Kan. 369, 89 Pac. 671. Such a situation could be established under the allegations of the second defense. The court erred in ordering the allegations stricken.

The judgment of the trial court is reversed with directions to proceed in accordance with this opinion.